# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

GLORIA PATRICIA TAYLOR,

Defendant.

Criminal Action No. TDC-15-0265
Civil Action No. TDC-19-0065

## MEMORANDUM OPINION

Petitioner Gloria Patricia Taylor has filed a Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255.  In her Motion, Taylor challenges her conviction in the underlying criminal action on the basis that her trial counsel was constitutionally deficient in failing to move to suppress certain evidence and failing to raise a constitutional challenge to her sentence.  Having reviewed the submitted materials, the Court finds that no hearing is necessary.  *See* Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts; D. Md. Local R. 105.6.  For the reasons set forth below, the Motion will be DENIED.

## BACKGROUND

### I.  The Investigation

On July 1, 2013, the United States Drug Enforcement Administration ("DEA") was alerted to three suspicious crates that had been shipped from the same address in Tucson, Arizona to a shipping depot in Maryland.  One of the crates was addressed to Artistique Connection ("Artistique") in Brentwood, Maryland, and the other two were addressed to Royal Gem & Mineral, Inc. ("Royal Gem") in Landover, Maryland.  After obtaining a warrant to search the crates, law enforcement officers affiliated with the DEA ("DEA agents") discovered a total of

1,387 pounds of marijuana.  DEA agents then attempted multiple controlled deliveries at the listed shipping addresses, which were unsuccessful.  DEA was likewise unsuccessful in determining the intended recipients through the telephone numbers associated with the shipments.

However, DEA agents in Tucson identified Taylor as a suspect based on evidence that a vehicle rented in her name was observed outside the shipping depot in Tucson at the time that the three crates were shipped.  Through business records produced in response to subpoenas, DEA determined that Taylor had been in Arizona at the time of many shipments from Tucson to a variety of Maryland locations, including to Artistique and Royal Gem.

On February 18, 2014, upon an application by the DEA, United States Magistrate Judge Charles B. Day of this Court issued an order pursuant to 18 U.S.C. § 2703(d) requiring the production of, among other data, historical cell site location information ("CSLI") for one telephone number associated with Artistique.  On March 12, 2014, United States Magistrate Judge Jillyn K. Schulze of this Court issued three more § 2703(d) orders requiring the production of historical CSLI for three other telephone numbers, one of which was registered to Taylor, the second of which was believed to be used by Taylor, and the third of which had received a call from Taylor's number.  Based in part on this information, on May 2, 2014, Magistrate Judge Schulze issued a tracking warrant pursuant to Federal Rule of Criminal Procedure 41(a) and 18 U.S.C. § 2703(c) for the telephone number registered to Taylor, (757) 945-6589, permitting law enforcement to receive GPS tracking data from the cell phone through June 16, 2014.  This warrant was extended multiple times through late October 2014.  Each application for an extension included discussion of the historical CSLI in its description of the investigation.

GPS data obtained pursuant to these tracking warrants showed Taylor visiting a U-Haul store in Landover, Maryland.  DEA agents then learned that Taylor typically rented U-Haul vans

after her trips to Arizona for short time periods, usually under five hours, and returned them with little added mileage, consisting of 28 miles or less, during the rental period. The GPS data also showed that Taylor frequently entered a residence at 5507 Axton Court, Lanham, Maryland.

According to the tracking data, from September 20, 2014 to September 23, 2014, Taylor was in Tucson, Arizona. The data then showed that she was back in Maryland on September 30, 2014. That same day, DEA agents observed Taylor enter the U-Haul store and leave holding paperwork, briefly return to 5507 Axton Court, and then return to the store to pick up a U-Haul van. The tracking data then showed that Taylor returned to 5507 Axton Court, and DEA agents observed the U-Haul van in the driveway of the home, backed up to the open garage with its rear doors open. They also observed Taylor and an unknown male appearing to unload something from the van.

DEA agents approached the two individuals in the garage and detained them. At that point, a drug dog was brought to the scene to sniff the van and the crate, which was partially out of the back of the van. In order to gain access to the rear of the van, the drug dog and its handler entered the garage. At the van, the dog alerted to the odor of drugs. Taylor and the other individual, who was later identified as her son, were then read their *Miranda* rights. They both refused to consent to a search of the crate. Taylor also claimed not to know the contents of the crate or its source, but she did admit to having driven the U-Haul van. Using this information, the DEA sought and obtained a search warrant from a state court for, as relevant here, the U-Haul, the crate, and the residence at 5507 Axton Court ("the House"). Upon execution of the search warrant, the DEA found in the crate 14 bales of marijuana. Inside the House, the DEA recovered small quantities of marijuana, a postal scale, approximately $30,000 in cash, numerous cell phones, and multiple drug

ledgers.   After the search, Taylor was interviewed, took responsibility for the contents of the House, and was arrested.

## II.      Procedural History

On May 13, 2015, a federal grand jury returned an indictment against Taylor charging her with one count of conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846.   A superseding indictment filed on March 14, 2016 added two counts of using a communications device to facilitate narcotics trafficking, in violation of 21 U.S.C. § 843(b), and one count of possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841.   On April 15, 2016, Taylor filed a Motion to Suppress Statements in which she sought suppression of her written statement provided to law enforcement officers at the House as involuntary.   The Court denied the motion.   After a seven-day jury trial, on April 28, 2016, a jury convicted Taylor on all four counts.   Taylor filed a Motion for a New Trial on May 10, 2016.   After a hearing, the Court denied the motion on June 7, 2016.

On November 17, 2016, this Court held a sentencing hearing.   Taylor was subject to a mandatory minimum ten-year sentence on the conspiracy charge, pursuant to 21 U.S.C. §§ 841(b)(1)(A).   Although the guideline range under the United States Sentencing Guidelines was 151 months to 188 months, the Court varied downward and sentenced Taylor to 144 months of imprisonment on the conspiracy count, 48 months of imprisonment on both communications device counts, and 144 months of imprisonment on the possession with intent to distribute count, with all sentences running concurrently.

On November 21, 2016, Taylor filed a Notice of Appeal to the United States Court of Appeals for the Fourth Circuit.   In her appeal, she advanced three main arguments.   First, she argued that this Court erred in denying her motion to suppress because the written statement she

gave to law enforcement at the House was involuntary and had been coerced.  Second, she argued that her right to an impartial jury under the Sixth Amendment to the United States Constitution had been violated when a summary chart previously shown to the jury but not admitted into evidence had been inadvertently allowed into the jury room during deliberations.  Finally, she argued that her sentence should be overturned because the Court used an incorrect base offense level derived from a higher drug quantity not found by the jury, improperly imposed a two-level enhancement for obstruction of justice, and incorrectly calculated the amount included in the forfeiture order.

On May 23, 2017, the Fourth Circuit issued an unpublished opinion affirming this Court's judgment.  *United States v. Taylor*, 692 F. App'x 114, 118 (4th Cir. 2017) (per curiam).  Taylor sought rehearing *en banc*, but her request was denied.  She then filed a petition for a writ of certiorari to the United States Supreme Court, which was denied on January 8, 2018.  *Taylor v. United States*, 138 S. Ct. 715 (2018).  The present Motion followed.

## DISCUSSION

In her Motion, Taylor asserts claims of ineffective assistance of counsel under the Sixth Amendment to the Constitution.  First, she claims that her counsel was ineffective in failing to move to suppress evidence obtained pursuant to the September 30, 2014 search warrant.  Second, she alleges ineffective assistance based on her counsel's failure to raise an Eighth Amendment objection to her sentence.

## I.    Legal Standards

### A.    Section 2255 Motions

A prisoner in federal custody may move to vacate, set aside, or correct the sentence on the basis that:  (1) "the sentence was imposed in violation of the Constitution or laws of the United

States"; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (2018).  The petitioner bears the burden of proof and must establish the claim by a preponderance of the evidence.  *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam).  In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).  A hearing is necessary where there are disputed issues of fact that need to be resolved in order for the court to rule on the motion.  *See United States v. Witherspoon*, 231 F.3d 923, 927 (4th Cir. 2000).  Because the Court need not resolve factual disputes in order to resolve the Motion, it declines to hold an evidentiary hearing.

## B.     Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "Assistance of Counsel." U.S. Const. amend VI.  The United States Supreme Court has stated that "assistance which is ineffective in preserving fairness [of a trial] does not meet the constitutional mandate." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).  An individual alleging ineffective assistance of counsel in violation of the Sixth Amendment must meet the standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under this standard, the individual must show both deficient performance and prejudice—that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

II.     **Search Warrant**

In her Motion, Taylor argues that her trial counsel's failure to file a motion to suppress relating to the search warrant issued on September 30, 2014 ("the Search Warrant") constituted ineffective assistance of counsel because there were two different legal bases for suppression that should have been advanced.  The first is that the cell phone data, including historical CSLI and GPS tracking data, referenced in the Search Warrant application were collected in violation of the Fourth Amendment.  The second is that the dog sniff of the U-Haul van also violated the Fourth Amendment.  The Court will conduct *Strickland*'s two-part inquiry on these two arguments separately.

In the context of a claim of ineffective assistance of counsel based on a failure to file a motion to suppress, the Fourth Circuit has provided additional guidance on the application of the *Strickland* prongs.  On the deficient performance prong, "it is enough to call into question counsel's performance that an unfiled motion would have had 'some substance.'" *Grueninger v. Dir. Va. Dep't of Corrs.*, 813 F.3d 517, 524-25 (4th Cir. 2016) (quoting *Tice v. Johnson*, 647 F.3d 87, 108 (4th Cir. 2011)).  As for the prejudice prong, a petitioner must show both (1) that "the motion was meritorious and likely would have been granted," and (2) "a reasonable probability that granting the motion would have affected the outcome" of the trial.  *Id.* at 525.

A.     **Cell Phone Data**

Taylor's argument relating to the use of cell phone data in the Search Warrant application encompasses separate claims relating to the collection of historical CSLI and real-time GPS tracking data derived from Taylor's phone, each of which, Taylor contends, would have separately provided grounds to suppress the fruits of the Search Warrant.

### 1.    Historical Cell Site Location Information

Taylor's first claim is that the Government's collection and use of historical CSLI violated the Fourth Amendment because it improperly obtained the CSLI through multiple court orders issued pursuant to 18 U.S.C. § 2703(d).  This information was then used in applications to obtain multiple tracking warrants, which in turn resulted in the collection of GPS data used in the Search Warrant application.  A § 2703(d) order requires only that the Government provide "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d) (2018).  Taylor asserts that her trial counsel should have argued that the use of § 2703(d) to obtain the historical CSLI was improper because such data may be obtained only upon a showing of probable cause.

As an initial matter, the Court finds that a suppression motion based on this claim would have had "some substance."  *Grueninger*, 813 F.3d at 524-25.  As of both the March 11, 2016 motions deadline in this case and Taylor's jury trial, which began on April 19, 2016, the Fourth Circuit had held that obtaining historical CSLI constitutes a search, such that the Fourth Amendment bars the Government from obtaining it "without first securing a judicial warrant based on probable cause."  *United States v. Graham*, 796 F.3d 332, 360-61 (4th Cir. 2015) ("*Graham I*"), *rev'd en banc*, 824 F.3d 421 (4th Cir. 2016).  Indeed, the historical CSLI at issue in *Graham I* was produced, as here, in response to § 2703(d) orders.  *Id.* at 344.  Shortly after Taylor's trial, however, the Fourth Circuit, after granting rehearing *en banc* in *Graham*, reversed the panel's decision and held that using § 2703(d) orders to obtain historical CSLI did not run afoul of the Fourth Amendment.  *United States v. Graham*, 824 F.3d 421, 424 (4th Cir. 2016) (en banc) ("*Graham II*").  In 2018, the Supreme Court resolved this issue by holding that, consistent with

the panel decision in *Graham I*, the collection of historical CSLI is a search requiring probable cause under the Fourth Amendment. *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018). Nevertheless, where, at the relevant procedural moment, controlling circuit authority held that the Government's method of collecting evidence violated the Fourth Amendment, a motion to suppress that evidence would have had "some substance," thereby calling into question Taylor's counsel's performance. *Grueninger*, 813 F.3d at 524-25.

However, as to prejudice, Taylor is unable to show, as she must, that this motion "likely would have been granted." *Id.* at 525. Rather, where both the § 2703(d) orders and the Search Warrant that explicitly relied on historical CSLI obtained through those orders were issued by magistrate judges, the good faith exception likely would have precluded the suppression of the historical CSLI and any of the fruits of the Search Warrant itself. Although "[t]he exclusionary rule generally prohibits the introduction at criminal trial of evidence obtained in violation of a defendant's Fourth Amendment rights," *United States v. Stephens*, 764 F.3d 327, 335 (4th Cir. 2014) (citation omitted), the good faith exception may prevent the suppression of such evidence where law enforcement reasonably relies on (1) an enacted statute, (2) a search warrant or other court order issued by a neutral magistrate, or (3) binding appellate precedent, *see Davis v. United States*, 564 U.S. 229, 240-41 (2011).

Here, the DEA agents obtaining the historical CSLI relied on court orders issued by the magistrate judges. Under *United States v. Leon*, 468 U.S. 897 (1984), evidence obtained in contravention of the Constitution will generally not be suppressed where, as here, "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920. None of the exceptions to *Leon*'s general rule apply here. There are no allegations that the magistrate judges in issuing the § 2703(d) orders and the Search Warrant

9

were "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth" or that "the issuing magistrate wholly abandoned [the] judicial role." *Id.* at 923 (citations omitted).  Nor is there any basis to conclude that the court order or warrant was "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid," or that the affidavit was so lacking in indicia of the relevant legal standard "as to render official belief in its existence entirely unreasonable," *id.* (citation omitted).  A review of the applications for the § 2703(d) orders shows that the first order, issued on February 18, 2014, was supported by an application that included facts describing the July 1, 2013 seizure of the marijuana shipment to Artistique and identifying the phone number in question, (240) 472-5941, as the number of a prepaid cell phone activated on June 27, 2013 and provided to R&L Carriers, the freight carrier for the marijuana shipment, as the new contact number for Artistique.  The application further stated that the number was used in communications with R&L Carriers relating to the July 1, 2013 shipment.  The application for the second order, issued on March 12, 2014 for the phone number (202) 746-8969, included facts establishing that this phone number was associated with another prepaid cell phone activated on June 27, 2013 that was used to call (202) 472-5941 and to make 64 calls and text messages before July 2, 2013 to James Willis, the R&L Carrier delivery driver responsible for prior shipments to Artistique.  The application for the order relating to (757) 945-6589, also issued on March 12, 2014, stated that business records showed that Gloria Taylor had rented a vehicle seen outside the shipping depot in Tucson from which the July 1, 2013 marijuana shipment was sent, at around the time it was sent; that travel records showed that Taylor had visited Tucson at the time of two other 2013 shipments to Artistique; and that Taylor was the subscriber for the phone in question, which was used in Arizona in 2013 and 2014 at times when airline records showed that Taylor had traveled there.  Finally, the

application for the March 12, 2014 order relating to (443) 240-8756 stated that Taylor had provided

that telephone number when renting a vehicle from Avis Rent-A-Car in Tucson in April 2013, and

that the number had been used in communications with Willis in June 2013, shortly before the July

1, 2013 marijuana shipment.  The Court finds that these applications contained facts sufficient for

a reasonable law enforcement officer to believe that there was a reasonable suspicion that these

telephone numbers were linked to potential drug activity.  *See In re United States for an Order*

*Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d 283, 287 (4th Cir. 2013) (holding that the standard for

§ 2703(d) orders "is essentially a reasonable suspicion standard"); *United States v. Foreman*, 369

F.3d 776, 781 (4th Cir. 2004) ("[T]he reasonable suspicion standard is a less demanding standard

than probable cause and requires a showing considerably less than a preponderance of the

evidence." (citation omitted)).

Moreover, the DEA followed the procedures set forth in an enacted statute, namely, 18

U.S.C. § 2703, that was not clearly unconstitutional, and it secured from judicial officers § 2703(d)

orders and a search warrant that were not "facially deficient."  *Leon*, 468 U.S. at 923.  The law

enforcement officers reasonably relied on them because at the time that the Government sought

and obtained the § 2703(d) orders for historical CSLI in February and March 2014 and the Search

Warrant in September 2014, there was no controlling authority holding that such orders were

improper.  Indeed, the Fourth Circuit had not yet decided *Graham I*, as the panel decision was

issued on August 5, 2015.  Where the *en banc* decision in *Graham II* concluded that such orders

were proper, it could not fairly be argued that law enforcement officers, prior to *Graham I* and

*Carpenter*, would have known that the use of a § 2703(d) order in this manner violated the Fourth

Amendment.  Under these circumstances, "[w]ithout question . . . the good-faith exception to the

exclusionary rule applies to the investigators' actions here" and would prevent suppression of

historical CSLI or the fruits of the Search Warrant. *United States v. Chavez*, 894 F.3d 593, 608 (4th Cir. 2018) (holding that historical CSLI collected through the SCA and court orders before *Graham I* and *Carpenter* was subject to the good faith exception); *Graham I*, 796 F.3d at 363 (applying the good faith exception to decline to suppress evidence because the unconstitutionality of seeking an § 2703(d) order instead of a warrant "was not so clear" to the law enforcement officers because "[p]rior to our ruling today, neither this Court nor the U.S. Supreme Court had deemed the government's conduct in this case unconstitutional)"). Where any deficient performance in not seeking suppression of evidence based on the use of § 2703(d) orders to obtain historical CSLI did not result in prejudice, the Court will deny the Motion as to this argument.

### 2.    Tracking Data

Taylor also argues that her trial counsel was ineffective in failing to object to evidence obtained pursuant to the Search Warrant on the grounds that "investigators obtained GPS real-time tracking data from carriers outside of this judicial district with a probable cause warrant under" Federal Rule of Criminal Procedure 41 and the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2711, because the SCA does not authorize the use of a cell phone as a tracking device. Mot. Vacate ("2255 Mot.") at 12, ECF No. 147. According to Taylor, by using the SCA to obtain a tracking warrant, investigators circumvented allegedly more stringent requirements imposed on the use of mobile tracking devices by the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 3117, which provides that "[i]f a court is empowered to issue a warrant or other order for the installation of a mobile tracking device, such order may authorize the use of that device within the jurisdiction of the court, and outside that jurisdiction if the device is installed in that jurisdiction." 18 U.S.C. § 3117(a).

During the investigation, magistrate judges of this Court issued four "tracking warrants" covering the time period from May 2, 2014 to October 27, 2014 allowing the Government to obtain real-time information on the location of Taylor's cell phone. *See, e.g.*, May 2, 2014 Tracking Warrant, 2255 Mot. Ex. G, ECF No. 147-7. In the applications for each warrant, the Government referenced Rule 41 and a provision of the SCA, 18 U.S.C. § 2703(c)(1)(A), as authority for the warrant. The relevant part of the SCA states that the Government may require "a provider of electronic communication service" to disclose records relating to a "customer of such service" if the Government "obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure." 18 U.S.C. § 2703(c)(1)(A). Rule 41 permits a magistrate judge to issue a warrant "if there is probable cause to . . . install and use a tracking device." Fed. R. Crim. P. 41(d)(1). The tracking warrants issued in this case specifically stated that the magistrate judge had determined that the tracking warrant was supported by probable cause.

Although Taylor asserts that the Government's reliance on the SCA was improper, she does not point to any controlling precedent establishing that the Government and the magistrate judge could not rely on the SCA to obtain a tracking warrant for a cell phone. Instead, she identifies a handful of district court opinions concluding that the use of a cell phone as a tracking device is covered by ECPA and Rule 41. Most of these cases, however, while objecting to the use of the SCA, were faced with requests to obtain real-time tracking data on a standard lower than probable cause and thus stand for the proposition that such data cannot be obtained without a showing of probable cause as required by Rule 41. *See In re Order Authorizing Prospective and Continuous Release of Cell Site Location*, 31 F. Supp. 3d 889, 890, 900-01 (S.D. Tex. 2014) (holding that obtaining prospective cell phone location information under the lower threshold of § 2703(d) and not pursuant to Rule 41 is unlawful); *In re Application for Orders Authorizing Installation and*

13

*Use of Pen Registers*, 416 F. Supp. 2d 390, 391, 397 (D. Md. 2006) (rejecting an application for prospective cell phone tracking information invoking the lower standard of § 2703(d) that did not satisfy Rule 41 and did not make a probable cause showing); *In re Application for Pen Register and Trap/Trace Device*, 396 F. Supp. 2d 747, 748-50, 765 (S.D. Tex. 2005) (rejecting a request for real-time cell phone tracking information solely under the lower standard of § 2703(d) but noting that this information was available through Rule 41 with a probable cause showing).  In one case, the court considered and rejected the approach used here, an application under the combination 18 U.S.C. § 2703(c)(1)(A) and Rule 41, but held that real-time tracking information could be obtained based on a showing a probable cause under Rule 41.  *In re Application for Order Authorizing Disclosure of Location Information*, 849 F. Supp. 2d 526, 583-84 (D. Md. 2011).  Here, the tracking warrants, even while citing § 2703(c)(1)(A), invoked Rule 41 and explicitly sought and obtained the warrants under a probable cause standard.  Thus, there would have been no substantive basis to find that the tracking warrants violated the Fourth Amendment.

Even assuming that the non-binding district court opinions objecting to the citation to the SCA in tracking warrant applications sufficiently identified a technical violation in such applications so that a challenge to the tracking warrant evidence would have had "some substance," *Grueninger*, 813 F.3d at 524-25, Taylor has not established that a motion to suppress would have been "meritorious" and that it "likely would have been granted," *id.* at 525.  As with the historical CSLI, any improper applications to obtain real-time tracking data would be subject to the good faith exception to the exclusionary rule.  *See Leon*, 468 U.S. at 920.  Here, the Government relied on warrants issued by neutral magistrate judges to collect this data.  Just as with the historical CSLI, the warrants authorizing law enforcement's collection do not fall into the exceptions to *Leon*'s general rule against suppression.  There is no evidence that "the magistrate or judge in

14

issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," that "the issuing magistrate wholly abandoned his judicial role," that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or that the warrant was "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* at 923 (citations omitted).

Indeed, in the absence of controlling authority to the contrary, a reasonable law enforcement officer could have relied on the magistrate judge's willingness to issue a warrant based on Rule 41 and 18 U.S.C. § 2703(c)(1)(A). Notably, Rule 41 explicitly allows a magistrate judge to issue a warrant for the installation of a tracking device based on a finding of probable cause, Fed. R. Crim. P. 41(d)(1), and the SCA authorizes the use of such a provision to obtain "a record or other information pertaining to a subscriber or customer" of an "electronic communication service," 18 U.S.C. § 2703(c)(1)(A), which does not clearly preclude the collection of real-time tracking data relating to a cell phone customer. Thus, a reasonable law enforcement could have fairly and in good faith relied on the magistrate judge's warrant. Under these circumstances, at a minimum, the good faith exception would apply to prevent the suppression of the evidence obtained through the tracking warrants.

Taylor further argues that trial counsel should have challenged the evidence obtained through the tracking warrants because ECPA created "more significant restrictions," 2255 Mot. at 15, by stating that a tracking order "may authorize the use of that device within the jurisdiction of the court, and outside that jurisdiction if the device is installed in that jurisdiction." 18 U.S.C. § 3117(a). The Court does not agree with this interpretation. The tracking warrants in this case were issued based on a finding of probable cause, the same standard that would have been applied if the

warrant were obtained pursuant to ECPA.  *See In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F. Supp. 2d at 751 ("The ECPA was not intended to affect the legal standard for the issuance of orders authorizing these devices.").  Rather, 18 U.S.C. § 3117(a) actually expanded the Government's ability to track devices moving across district lines.  *See United States v. Gbemisola*, 225 F.3d 753, 758 (D.C. Cir. 2000) ("[S]ection 3117 provides a basis for *authorizing* the use of a mobile tracking device.  But . . . section 3117 does not *prohibit* the use of a tracking device in the absence of conformity with the section.  Nor does it bar the use of evidence acquired without a section 3117 order." (citation omitted)).  Here, in the tracking warrants, the magistrate judges effectively deemed the "tracking device," which was Taylor's cell phone, to have been installed in this District, and, consistent with 18 U.S.C. § 3117(a), explicitly directed the Government that "[t]he tracking may occur within this district or another district." *E.g.*, May 2, 2014 Tracking Warrant at 1.  Thus, Taylor's claims that the tracking warrants exceeded the authority of ECPA, and that they were effectively general warrants, are baseless, and there was no legal requirement that the Government explicitly inform the court in subsequent applications that it had, in fact, monitored Taylor's locations outside of the District of Maryland. As a practical matter, the tracking warrant application affidavits made clear that Taylor was expected to travel to Arizona, and that she was subjected to surveillance there, so the magistrate judges were on notice of the scope of the use of the real-time tracking data.  For all of these reasons, the Court finds that trial counsel's failure to challenge the use of cell phone tracking data and evidence derived from such data was either not deficient or not prejudicial, as any challenges would have been denied outright or under the good faith exception.  The Court will deny the Motion as to the applications for, and the use of, cell phone tracking data.

### B.     Dog Sniff

Taylor also argues that trial counsel should have filed a motion to suppress the fruits of the Search Warrant because they derived from an improperly conducted dog sniff of the U-Haul van which resulted in an alert for the presence of drugs, a fact which was used in the application for the Search Warrant.  Taylor references *Collins v. Virginia*, 138 S. Ct. 1663 (2018), in which the Supreme Court held that law enforcement may not intrude into a home or onto "the curtilage" of a home in order to conduct a warrantless search of a vehicle pursuant to the automobile exception to the warrant requirement.  *Id.* at 1671.  "Curtilage" is defined as "an area adjacent to the home and to which the activity of home life extends" and may include a "front porch, side garden or area outside the front window."  *Id.* (citation omitted).  In *Collins*, the police had gone onto the defendant's property, up the driveway, and into an area enclosed by a brick wall on two sides and by the house on a third side in order to conduct a search of a motorcycle located in that enclosed area.  *Id.* at 1670.  Here, while the U-Haul van was parked in the driveway of Taylor's residence, it was backed up to the garage, and the police dog and its handler entered Taylor's open garage without a warrant in order to access the van from the rear doors.

Where, under *Collins*, such an entry into the garage appears to have violated the Fourth Amendment, a motion to suppress the fruits of the Search Warrant, even based on events pre-dating *Collins*, may have had "some substance."  *Grueninger*, 813 F.3d at 524-25.  However, as was the case with the arguments relating to CSLI and tracking data discussed above, such a motion would have been unlikely to succeed because of the good faith exception.  *Id.* at 525.  Here, where the law enforcement officers relied on the issuance of the Search Warrant by a neutral judicial officer, the good faith exception would apply unless Taylor showed that the issuing judicial officer had "abandoned [the] judicial role," that the affidavit was so lacking in indicia of probable cause

that it could not reasonably be relied upon, that the warrant was "facially deficient," or that the judicial officer was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923.

Focusing on this last point, Taylor argues that the failure of DEA to disclose that the police dog had entered the garage in order to complete its sniff of the U-Haul van was a material omission from the Search Warrant affidavit that would preclude the application of the good faith exception. Taylor is correct that the good faith exception does not apply where the application for the search warrant was misleading because it contained facts or material omissions that the affiant knew were false or would have known were false absent reckless disregard for the truth. *See United States v. Williams*, 548 F.3d 311, 317 (4th Cir. 2008); *see also United States v. Gentry*, 941 F.3d 767, 780 (5th Cir. 2019). Taylor's argument fails for two reasons. First, the failure to disclose in the Search Warrant affidavit the entry into the garage was not a material omission because as of 2014, four years before *Collins*, the law did not bar the conduct at issue. *United States v. Wharton*, 840 F.3d 163, 168-69 (4th Cir. 2016) (stating that an omission is not material unless its "inclusion in the affidavit would defeat probable cause." (citation omitted)). As of the time of the search, the Supreme Court had upheld a warrantless search of a car inside the curtilage of a residence, where the car had just been driven into the defendant's garage, the police officers could have stopped and searched the car just before it entered the garage, and "no search was made of the garage." *Scher v. United States*, 305 U.S. 251, 254 (1938). Likewise, here, the dog sniff undisputedly could have occurred just outside the garage, and the garage itself was not searched.

More recently, the Fourth Circuit rejected the argument that that the automobile exception to the warrant requirement did not apply where the vehicle was parked on a private residential driveway and upheld such a warrantless search. *See United States v. Brookins*, 345 F.3d 231, 234,

237-38 (4th Cir. 2003) (rejecting the argument that that the automobile exception did not apply where the automobile was parked on a private residential driveway); *see also United States v. Southerland*, 442 F. App'x 767, 768-70 (4th Cir. 2011) (upholding a warrantless search of a vehicle found on a private residential driveway); *United States v. Hines*, 449 F.3d 808, 810, 813-15 (7th Cir. 2006) (applying the automobile exception to the search of a vehicle on a residential driveway that backed up to the residence and that was apparently being unloaded).

Thus, although *Collins* later distinguished and clarified *Scher*, as of 2014, under controlling case law, whether the police officer and dog had entered onto the curtilage of Taylor's residence before conducting the dog sniff was not a material fact that had to be disclosed in the search warrant affidavit, and the act of conducting the dog sniff itself would be subject to the good faith exception. *See Davis*, 564 U.S. at 241 (applying the good faith exception to a warrantless search that was objectively reasonable based on binding appellate precedent); *United States v. Velazquez*, 906 F.3d 554, 559-61 (7th Cir. 2018) (applying the good faith exception to a pre-*Collins* dog sniff of an automobile parked next to a garage without resolving whether the automobile was within the curtilage of the home).

Second, the fact that the police dog entered the garage was not material because the information about the dog sniff was not necessary to establish probable cause to search the U-Haul van. At that point, the DEA had a myriad of facts supporting probable cause to search the van. Among other evidence, in July 2013, the DEA seized two large shipments from Tucson, Arizona to Royal Gem and Artistique in Maryland that proved to contain multiple bales of marijuana. DEA agents observed a vehicle rented by Taylor at the Tucson shipping depot at the time that one of these shipments was sent. Taylor's phone records showed over 60 calls with an R&L Carrier employee in the time frame of the July 2013 shipments. Additional records revealed that Taylor

traveled to Tucson on over 18 occasions in 2013 and 2014 at times that coincided with shipments from that shipping depot to those same businesses in Maryland.  Records also showed that Taylor rented U-Hauls in Maryland after each trip to Arizona, each time returning the van after only a few hours and after having driven almost the exact same short distance.  On September 30, 2014, Taylor had followed the same pattern, having recently visited Tucson and having just rented a U-Haul van, and was in the process of unloading it at her residence.  These facts, even without consideration of the dog sniff, were more than sufficient to establish probable cause to search then van.  Once the van was searched and the marijuana was discovered, there would plainly have been probable cause to search the residence as well.

Where Taylor's claim is once again based on a change in the law occurring after the events in question, such that the good faith exception would have applied, the Court finds that the failure to seek suppression on this basis did not prejudice Taylor as required to establish ineffective assistance of counsel on this claim.  The Court will therefore deny the Motion as the claims relating to the failure to seek to suppress evidence.

## III.    Proportionality of Sentence

As to Taylor's Eighth Amendment argument, Taylor's reply brief clarifies that she is asserting not a direct challenge to the constitutionality of the sentence under the Eighth Amendment, but a claim that her counsel was constitutionally ineffective in failing to object to the sentence as unconstitutional cruel and unusual punishment.  Accordingly, her claim is properly construed as a Sixth Amendment ineffective assistance of counsel claim for which she must show both deficient performance and prejudice.  *See Strickland*, 466 U.S. at 687; *United States v. Allmendinger*, 894 F.3d 121, 126 (4th Cir. 2018).

On the issue of deficient performance, the Court finds that the argument that Taylor asserts should have been made—that her 144-month sentence was disproportionate to the crimes of conviction and therefore violated the Eighth Amendment—would not have been a strong one.  The Eighth Amendment can be violated by punishment that "is disproportionate to the crime for which it is imposed."  *United States v. Cobler*, 748 F.3d 570, 575 (4th Cir. 2014).  Under this principle, the Eighth Amendment "forbids only extreme sentences that are grossly disproportionate to the crime."  *Graham v. Florida*, 560 U.S. 48, 60 (2010) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).  Such a claim can be either a "categorical challenge," in which the defendant asserts that "an entire class of sentences is disproportionate based on 'the nature of the offense' or 'the characteristics of the offender,'" or an "as-applied" challenge, in which the defendant contests the length of the sentence as disproportionate "given all the circumstances in a particular case."  *Cobler*, 748 F.3d at 575 (quoting *Graham*, 560 U.S. at 59-60).  Here, Taylor does not specify the nature of her challenge, but she appears to assert both forms, as she argues that the statute imposing a mandatory minimum sentence for drug distribution is categorically disproportionate, and that based on her lack of a prior criminal record, and the lack of violence, other types of drugs, or additional criminal associates in connection with her crime, her 144-month sentence was disproportionate.

As to a categorical challenge to the ten-year mandatory minimum sentence on the conviction for conspiracy to distribute or possess with intent to distribute 1,000 kg or more of marijuana, 21 U.S.C. §§ 841(b)(1)(A), 846 (2018), Taylor has identified no authority supporting the conclusion that such a sentence would violate the Eighth Amendment as disproportionate. Such a holding would be a marked extension of existing precedent, as "the only two contexts in which the Supreme Court categorically deemed sentences unconstitutionally disproportionate"

involved sentences of death and life imprisonment without parole. *Cobler*, 748 F.3d at 580-81.  In fact, the Supreme Court declined to find as unconstitutionally disproportionate under the Eighth Amendment a sentence of life imprisonment without parole for the possession of 672 grams of cocaine. *Harmelin v. Michigan*, 501 U.S. 957, 961, 994 (1991).  Likewise, Taylor has identified no authority supporting the conclusion that a 12-year sentence on the present charges, which was below the applicable guideline range, would be unconstitutionally disproportionate, even for a first-time, non-violent offender.

Nevertheless, Taylor argues that both the mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) and Taylor's specific sentence were disproportionate because a national consensus has developed in favor of marijuana use, pointing to the growing number of states that have legalized marijuana use for recreational or medicinal purposes.  To be sure, in assessing whether a punishment is cruel and unusual, "community consensus [is] entitled to great weight." *Graham*, 560 U.S. at 67 (citation omitted).  Even assuming that such a consensus now exists, that fact would not establish that there is widespread public support for the conduct at issue here:  the manufacture, distribution, or possession with intent to distribute of over 1,000 kilograms of marijuana.  *See* 21 U.S.C. § 841.  Maryland, for example, has decriminalized the possession of up to only 10 grams of marijuana, in addition legalizing it for medical use.  *See* Md. Code Ann., Crim. Law § 5-601(c) (LexisNexis 2017).  Similarly, Vermont has legalized only the possession of up to one ounce of marijuana and the cultivation of up to two marijuana plants.  *See* Vt. Stat. Ann. tit. 18, § 4230 (2018).  Thus, the recent adoption of state laws decriminalizing possession of personal use quantities of marijuana does not signify a broad consensus that large-scale marijuana trafficking should not be subject to significant criminal penalties.  Taylor has identified no court that has found such a consensus and concluded that it rendered statutes imposing mandatory minimum

penalties for large-scale marijuana trafficking unconstitutional.  So a categorical challenge to the marijuana penalties in 21 U.S.C. § 841(b)(1)(A) based on a new national consensus would be unlikely to succeed.

Moreover, even if there were a national consensus in favor of lower sentences for marijuana trafficking activities, such a consensus "is not itself determinative of whether a punishment is cruel and unusual."  *Graham*, 560 U.S. at 67.  On an as-applied challenge, the Court must also consider "the culpability of the offenders at issue in light of their crimes and characteristics," "the severity of the punishment in question," and "whether the challenged sentencing practice serves legitimate penological goals."  *Id*.  Here, Taylor, even while a non-violent, first-time offender, was not a streel-level dealer or someone who sold marijuana to support a drug habit.  She was engaged in a drug trafficking scheme at a high level of the operation.  She was directly engaged in arranging the transport of very large quantities of marijuana, shipped on pallets via freight carrier, from Arizona to Maryland.  Because the marijuana came from Tucson, Arizona, it was highly likely that it had arrived from Mexico, such that she was engaged in an international narcotics trafficking operation.  Based on the evidence presented at trial and sentencing, she oversaw at least a dozen shipments from October 2012 to July 2013, totaling 5,220 pounds (2,367 kilograms) of marijuana, worth approximately $5 million.  There was also evidence of another 16 shipments before the time period of the charged conspiracy and of additional shipments from July 2013 to September 2014. Where Taylor was a significant supplier who arranged major interstate or international shipments, and she has identified no federal court that has found an Eighth Amendment violation based on similar sentence, an as-applied claim that her sentence was disproportionate under the Eighth Amendment would have been unlikely to succeed.  The Court therefore finds no prejudice from any failure by Taylor's counsel to assert an Eighth Amendment claim.

Finally, the Court notes that to the extent that Taylor is arguing that her appellate counsel was deficient in not appealing her sentence on Eighth Amendment grounds, she must show that this argument would have been so much stronger than those that counsel actually *did* raise that the "strong presumption of reasonable performance" is overcome. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." (citation omitted)); *cf. United States v. Conner*, 456 F. App'x 300, 306-07 (4th Cir. 2011) (holding that counsel did not provide ineffective assistance at sentencing where, "even if there were good arguments that [counsel] did not make, there were many good ones that he did make and indeed made effectively" (citation omitted)).  On appeal, Taylor's counsel raised three separate claims with respect to her sentence:  that the Court established an incorrect base offense level, that it imposed an improper two-level enhancement for obstruction of justice, and that it miscalculated the monetary amount that should be subject to a forfeiture order.  While these claims were ultimately unsuccessful, Taylor has not shown—and the Court does not find—that choosing to present these arguments instead of a categorical challenge to a type of sentence the Supreme Court has never found categorically unconstitutional, was ineffective assistance. *See Cobler*, 748 F.3d at 580-81.  For all the reasons stated above, the Court therefore finds no ineffective assistance on the part of appellate counsel as to the Eighth Amendment claim.

## IV.     Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" on a § 2255 petition.  Because the accompanying

Order is a final order adverse to the applicant, Taylor must receive a certificate of appealability before an appeal may proceed.  28 U.S.C. § 2253(c)(1).

When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Buck v. Davis,* 137 S. Ct. 759, 773-74 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).  When a petition is denied on procedural grounds, the petitioner meets the standard with a showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Taylor's claims are denied on the merits, and, upon review of the record, this Court finds that she has not made the requisite showing.  The Court therefore declines to issue a certificate of appealability.  Taylor may still request that the Fourth Circuit issue such a certificate.  *See* Fed. R. App. P. 22(b); *Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## CONCLUSION

For the foregoing reasons, Taylor's Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255 will be DENIED.  The Court declines to issue a certificate of appealability.  A separate Order shall issue.


Date:  April 17, 2020                                  /s/ *Theodore D. Chuang*
                                                       THEODORE D. CHUANG
                                                       United States District Judge