## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

GLORIA PATRICIA TAYLOR,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

Civil Action No. TDC-19-0065
Crim. Action No. TDC-15-0265

## MEMORANDUM ORDER

Pending before the Court is Gloria Patricia Taylor's Motion Under Fed. R. Civ. P. 59(e) to Alter or Amend Judgment, ECF No. 162, in which Taylor seeks reconsideration of the Court's denial of her Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255 ("the § 2255 Motion"). ECF Nos. 160, 161. Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment within 28 days of the entry of judgment. Fed. R. Civ. P. 59(e). Such a motion may be granted in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012).

## DISCUSSION

In the Motion, Taylor asserts three arguments. First, Taylor argues that the Court committed a clear error of law by applying an incorrect legal standard on the issue of prejudice on a claim of ineffective assistance of counsel. Upon review of the Court's memorandum opinion denying the § 2255 Motion, the Court finds that it applied the correct legal standard and did not

apply an enhanced prejudice standard. The Court specifically referenced the applicable prejudice standard that there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Mem. Op. at 6, ECF No. 160 (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). In discussing the specific context of whether the failure to file a motion to suppress meets this standard, the Court relied on *Grueninger v. Director, Virginia Department of* Corrections, 813 F.3d 517 (4th Cir. 2016), in which the United States Court of the Appeals for the Fourth Circuit specifically stated that it had "further refined the *Strickland* analysis as it applies in cases, like this one, where an ineffectiveness claim is based on counsel's failure to file a motion to suppress." *Id.* at 524. The court then stated:

> [T]he prejudice prong in such cases has two distinct components, with the petitioner required to show both (1) that the motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of the trial.

*Id.* at 525. Although Taylor argues that in a footnote, the *Grueninger* court acknowledged that there are many ways to phrase this standard, the fact remains that the formulation it chose to use twice in its opinion as its own version was "likely would have been granted." *Id.* at 525, 530 & n.9. This is the precise standard applied by this Court in denying the § 2255 Motion. Mem. Op. at 9. The Court therefore did not apply an improperly high standard. Having found that the first prong was not met, the Court did not need to reach the second.

Notably, Taylor does not precisely state what standard it would have the Court apply. Assuming it would argue that the test should be whether there was a "reasonable probability" that the motion would have been granted, a version not actually adopted in *Grueninger*, the Court still finds that there was no prejudice. For the reasons stated in its memorandum opinion relating to the good faith exception, Mem. Op. at 9-12, 17-20, this Court further finds that, in the alternative, there was no reasonable probability that motions to suppress relating to historical cell site

information or the search warrant on Taylor's home would have been granted. Accordingly, there is no basis to reconsider the Court's ruling on ineffective assistance of counsel relating to such motions.

Second, Taylor argues that the Court must reconsider its ruling because it was premised on the conclusion that the investigating law enforcement agents from the Drug Enforcement Administration ("DEA") relied in good faith on a facially valid court order pursuant to 18 U.S.C. § 2703(d), but the application for the § 2703(d) order relating to the phone number (757) 945-6589 referenced unlawfully collected historical cell site location information ("CSLI") in support of its assertion that "[ce]ll phone routing numbers show that Taylor utilized this phone in Arizona during the timeframe of October 9-10 2013 and January 22-25, 2014," which coincided with the timing of drug shipments from Arizona to Maryland. 3/12/14 Appl. § 2703(d) Order ¶ 3(e), No. 14-MC-0204 (D. Md. 2014). This argument fails because at the Court's request, the Government has produced the subpoenas used to obtain the information in question that establish that it did not seek or receive historical CSLI by subpoena. First, a subpoena issued pursuant to 21 U.S.C. § 876 was sent to Avis / Budget Car Rental, LLC on November 15, 2013 seeking rental records for Taylor, who had already been identified as a suspect because she had a rented a vehicle observed outside the Shipping Depot around the time of a July 2013 drug shipment from that location. In response, Avis provided records showing that Taylor had listed the phone number (757) 945-6589 as an alternate phone number in renting a vehicle on October 6, 2013 in Phoenix, Arizona. Second, two § 876 subpoenas, issued on January 7, 2014 and February 19, 2014, sought the following information from Sprint Corporation: for "[a]ll customers/subscribers for the date range given, provide name and street and/or mailing address, [l]ocal and long distance telephone connection records, including incoming and outgoing calls for: 757-945-6589." *E.g.*, 1/7/14 Subpoena at 1,

ECF No. 176. In response, Sprint provided subscriber information confirming that the phone number was registered to Taylor and call records listing individual calls with the number dialed, the number called, the date and time of the call, the duration of the call, and the "repoll" number, which identifies the general metropolitan area of the call.

The language of the subpoenas establishes that the Government did not seek historical CSLI by subpoena but instead sought ordinary subscriber and telephone connection records, which may be obtained by subpoena. 18 U.S.C. § 2703(c)(2) (2018) (permitting the use of an administrative subpoena to obtain such data). Moreover, the repoll information provided by Sprint does not constitute historical CSLI information because it provides only a single point of reference consisting of the major city or metropolitan area in which the phone switch used to route the call is located and does not identify the location of the cell towers that received the signal from Taylor's cell phone throughout the various calls. Regardless of the specific level of precision necessary for data to constitute historical CSLI, where this data did not include "a series of time-stamped records created as a mobile phone continuously pings nearby cell towers, pinpointing the location within a relatively small area," *United States v. Beverly*, 943 F.3d 225, 230 n.2, (5th Cir. 2019), and thus did not create a "record of [an individual's] physical movements" over time, *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018); *Beverly*, 943 F.3d at 239, it cannot be deemed to be historical CSLI.

In a similar case, the United States Court of Appeals for the Second Circuit upheld the obtaining of similar data by subpoena. *United States v. Zodhiates*, 901 F.3d 137, 144 (2d Cir. 2018). In *Zodhiates*, as here, the Government had issued subpoenas for cell phone billing records including subscriber information and "detail records of phone calls made and received," but did not specifically request information on the locations from which phone calls were made or

4

received. *Id.* at 141 & n.3. In response, the cell phone company provided "detailed call information, including the date and time of phone calls made," as well as the "service location" from which each call was made or received, consisting of the "general vicinity" of the cell phone at the time, such as the county name, but without details about the precise location within that general area. *Id.* at 141. The district court upheld the obtaining of the information by subpoena, and the Second Circuit affirmed on the grounds that regardless of *Carpenter*, which had been decided after the district court's ruling, the information had been lawfully obtained by subpoena under pre-*Carpenter* law, such that the good faith exception would apply and suppression was not warranted. *Id.* at 143-44. Thus, where the Government did not request location information as part of its general request for subscriber information and telephone connection records, its use of a subpoena to obtain the information was lawful at the time, and even if the repoll information could now be deemed to be subject to a higher standard, the good faith exception would clearly apply. *See id.*

Finally, the Court finds that even if the reference to the telephone connection records reflecting Taylor's presence in Arizona in October 2013 and January 2014 were omitted from the § 2703 application, there was ample evidence to meet the requisite standard that there were "reasonable grounds to believe" that the records sought were "relevant and material to an ongoing criminal investigation." 18 U.S.C § 2703(d). At that point, the DEA had identified Taylor as a suspect because she had rented a vehicle seen outside the Shipping Depot during the July 2013 drug shipment, she had exchanged text messages and calls with a delivery driver for a drug shipment, travel records showed that she was present in Arizona at the time of other drug shipments, and, as confirmed by the properly subpoenaed subscriber records and rental car company records, (757) 945-6589 was a phone number that she used during the relevant time

5

frame. Thus, the reference to cell phone routing information for (757) 945-6589 was not material to the issuance of the § 2703(d) order. *Cf. United States v. Moody*, 931 F.3d 366, 371 (4th Cir. 2019) (holding that in order to challenge the validity of a search warrant affidavit and secure an evidentiary hearing, the defendant must show materiality in that it contained false statements that "were necessary to the finding of probable cause"). For all of these reasons, the claim that the Court should reconsider its ruling because it relied on assertions supported by unlawfully obtained historical CSLI fails.

Based on this ruling, Taylor's third claim, that the § 2703(d) order tainted the search warrant for Taylor's home, necessarily fails as well. Because Taylor's arguments do not provide a basis to alter the Court's prior determination on the question of whether a certificate of appealability is warranted, the Court again declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion to Alter or Amend the Judgment, ECF No. 162, is DENIED. The Court declines to issue a certificate of appealability.

Date:  September 14, 2020

THEODORE D. CHUANG
United States District Judge